## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Zurich American Insurance Co.,

Plaintiff,

v.

NewMech Companies, Inc. and Corval
Group, Inc.,

Defendants.

Civ. No. 12-1568 (RHK/JSM)
**MEMORANDUM OPINION
AND ORDER**

Michelle D. Hurley, Anamarie Reyes Kolden, Steven Theesfeld, Yost & Baill, LLP,
Minneapolis, Minnesota, for Plaintiff.

James M. Jorissen, Ernest F. Peake, Patrick J. Lindmark, Leonard, O'Brien, Spencer,
Gale & Sayre, Ltd., Minneapolis, Minnesota, for Defendants.

## INTRODUCTION

This insurance-coverage dispute arises out of property damage to The Groveland,

a condominium building in Minneapolis. In 2006, certain piping connections in the

building separated, causing water damage to nearly thirty units and to common areas.

Defendants NewMech Companies, Inc. and Corval Group Inc. (collectively referred to as

"NewMech")[1] had designed and installed The Groveland's plumbing and were

responsible for the damage. NewMech's insurer at the time, Plaintiff Zurich American

Insurance Company ("Zurich"), paid for the building's repairs and then sought

---

[1] NewMech Companies Inc. is a wholly-owned subsidiary of Corval Group, Inc. (Defs.'
Mem. at 2), the parties refer to the two collectively in their briefing, and the Court
follows suit.

reimbursement from NewMech for the applicable deductible amount.  Zurich assessed a deductible for *each* unit damaged plus one for the common areas, but NewMech refused to pay, contending only *one* deductible applied to all of the building's damage.  Four years later, Zurich commenced this declaratory judgment action, seeking a determination as to the number of deductibles and total amount owed to Zurich under the parties' insurance contract.  Zurich now moves for partial summary judgment on the number of deductibles owed, but not the amount of each.  For the reasons set forth below, the Court will grant Zurich's Motion.

## BACKGROUND

In 2004, NewMech was retained to design and install domestic water lines for The Groveland during its construction.  On October 24, 2006, certain piping connections NewMech had installed separated, causing water damage to both common areas and individual condominium units in The Groveland.  (Compl. ¶ 7.)  NewMech promptly reported this to Zurich, which assigned the event a claim number.  (Id. ¶¶ 7–8.)  On October 28, a different piping connection separated, causing further damage to common areas and to additional individual units.  (Id. ¶ 9.)  NewMech again promptly reported the damage to Zurich, which assigned the event a second claim number.  (Id. ¶¶ 9–10.)  Zurich took over the repairs for the Groveland and hired the building's contractor, Frana Companies, Inc. ("Frana"), to repair the damage.  (Id. ¶ 11.)  In 2007, after

negotiations, Zurich and Frana reached a settlement for the total amount of the repairs and Zurich issued two liability payments, totaling $999,603.  (Id.)[2]

NewMech's insurance policy with Zurich covering the losses at issue—policy number GLO 3482469-04 (the "Policy")—provided for a $25,000 property-damage deductible "per claim," as opposed to "per occurrence."  (Id. Ex. A at 51.)  In June 2007, shortly after NewMech notified Zurich that it was cancelling its policy, Zurich informed NewMech that it would be treating the damage to each individual condominium as a separate "claim" and the damage to common areas as another "claim."  Zurich assessed a $25,000 deductible for each of these "claims"—seeking reimbursement from NewMech for $349,099 total.  (Brunn Aff. ¶¶ 13–14.)  Until this point, Zurich had referred to the damage to The Groveland as a single claim, and NewMech had expected to pay one or, at most, two deductibles.  (Id. ¶¶ 12, 16.)  NewMech refused to pay Zurich's invoice, maintaining it had submitted only one claim to Zurich for damage to The Groveland and therefore only one $25,000 deductible should apply.

In June of 2012, Zurich commenced this declaratory-judgment action pursuant to 28 U.S.C. §§ 2201 and 2202, seeking resolution of the parties' dispute as to the number of applicable deductibles.  Zurich now moves for partial summary judgment, seeking a declaration of the meaning and application of its "per-claim" deductible.  The Motion has been fully briefed and is ripe for disposition.

---

[2] The parties do not agree on what amount of the total repair cost was attributable to each individual condominium or common area, but that disagreement is outside the scope of this Motion.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  Beard v. Banks, 548 U.S. 521, 529–30 (2006); Weitz Co. v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

## ANALYSIS

### I.    The Voluntary Payment Doctrine

In response to the instant Motion, NewMech asserts Zurich is precluded from recovering *any* deductible under Minnesota's "voluntary payment doctrine" because it voluntarily paid the full cost of repairs when it was under no legal obligation to do so.  "[T]he voluntary payment doctrine is a long-standing doctrine of law" in Minnesota.[3]  Hanson v. Tele-Comms., Inc., No. C7-00-534, 2000 WL 1376533, at *3 (Minn. Ct. App.

---

[3] The parties' contract does not include a choice-of-law clause and "neither party raises a conflict of law issue" in this diversity action, therefore the Court will "simply appl[y] the law of the state in which it sits."  BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003).

Sept. 26, 2000).  It provides that "[o]ne who has knowledge of the material facts and makes a payment voluntarily cannot later recover it on the ground that he or she was under no legal obligation to make the payment in the first place."  <u>Minn. Pipe & Equip. Co. v. Ameron Int'l Corp.</u>, Civ. No. 11-2158, 2013 WL 1346152, at *9 (D. Minn. Apr. 3, 2013) (Tunheim, J.).  Under the terms of the Policy, Zurich was only legally obligated to pay "damages in excess of any deductible amounts."  Thus, NewMech argues its payment to Frana for the entire amount of the repairs, not just the amount in excess of NewMech's deductible(s), was voluntary and, under the doctrine, it is barred from now seeking to recover that voluntary payment.

Zurich asserts the payment was not voluntary, and thus the doctrine does not apply, because it paid while reserving its right to seek reimbursement from NewMech. This would preclude application of the doctrine because "a payment made with a reservation of the right to bring suit for recovery is not a voluntary payment."  <u>St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.</u>, 377 F. Supp. 2d 719, 725 (D. Minn. 2005).  To substantiate its argument, Zurich produced a page it contends is part of the Policy, which provides, "We may pay any part or all of the deductible amount to effect settlement of any claim or 'suit' and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us." Zurich acknowledges it inadvertently omitted this page from the copy of the Policy it

attached to its Complaint and during discovery but nonetheless seeks to enforce it.[4] NewMech disputes its enforceability, asserting the page cannot be part of the Policy because it was not included in the copy of the Policy delivered to NewMech in 2006 either. As Zurich's reservation of rights provides a defense against the application of the voluntary payment doctrine, its right to recover in this action hinges on whether that page is, in fact, part of NewMech's Policy. After reviewing the Policy and the parties' affidavits, the Court concludes the page is part of the Policy and is therefore enforceable.

The enforceability of an insurance policy is not dependent on its physical integrity; missing or destroyed policies may nonetheless be enforceable. See, e.g., American States Insurance Co. v. Mankato Iron and Metal, Inc., 848 F. Supp. 1436, 1441 (D. Minn. 1993) (Kyle, J.) (plaintiff established prima facie case of coverage although policy could not be located by either party). Thus, whether this page was omitted from the copy of the Policy delivered to NewMech is not dispositive of its enforceability. Instead, the critical question is whether the page was intended to be part of the Policy. To this end, Zurich has offered conclusive evidence: The omitted page is the second page of a two-page endorsement titled "DEDUCTIBLE LIABILITY INSURANCE," which is listed in the Policy's "Schedule of Forms and Endorsements," (Compl. Ex. A at 5), the first page of which *was* included in NewMech's copy of the Policy. (Id. at 51).

There can be no reasonable dispute as to whether the omitted page was part of the Endorsement or whether the Endorsement was part of the Policy. The first page of the

[4] As this page was produced for the first time along with Zurich's Reply brief, the Court held a status conference with the parties to address the late submission and directed each to submit supplemental briefing and affidavits. (See Doc. Nos. 25–33.)

Endorsement indicates in the bottom right-hand corner it is "Page 1 of 2."  It is also apparent from reading the contents of the first page of the Endorsement that a subsequent page is missing.  Paragraph "B" on the first page provides, "You may select a deductible amount on either a per claim or a per 'occurrence' basis."  (Id.)  It then continues under subparagraph "1" to describe a "per claim basis."  But there is no explanation of a "per occurrence basis" on the first page nor any further subparagraphs, as one would expect based on the subject matter and organization of the preceding text.  The contents of the Endorsement may also be verified by viewing the blank version of this standard-form Endorsement and by NewMech's previous versions of this renewal Policy, which Zurich's internal records suggest included the entire Endorsement.

Based on the foregoing, the Court is satisfied that the omitted page is part of the Endorsement, although evidently left out of the physical copy provided by clerical error.  Therefore, Zurich's reservation of rights is enforceable, and it will be allowed to seek reimbursement from NewMech for its deductible(s).

## II.      The Policy's "Per Claim" Deductible

When interpreting an insurance policy, the Court must construe the contract as a whole, "with unambiguous language given its plain and ordinary meaning."  Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899, 905 (8th Cir. 1995).  The Court's aim is to ascertain and give effect to the intent of the parties as reflected in their contract.  St. Paul Fire & Marine Ins. Co. v. Futura Coatings, Inc., 993 F. Supp. 1258, 1261 (D. Minn. 1998).  Unless it determines the Policy's language is ambiguous, the Court may not consider evidence other than the Policy itself.  See Hous. & Redev. Auth. of Chisolm,

<u>Minn. v. Norman</u>, 696 N.W.2d 339, 346 (Minn. 2005).  In this action, the parties disagree over the interpretation of the term "claim," for purposes of the Policy's "per claim" deductible.

To resolve this dispute, the Court must first look to the Policy, which describes a "per claim basis" but does not specifically define a "claim."  The Policy provides:

> A.   Our obligation under the Bodily Injury Liability and Property Damage Liability Coverage to pay damages on your behalf applies only to the amount of damages in excess of [your] deductible . . . .
> B.   You may select a deductible amount on either a per claim or a per "occurrence" basis. . . .  The deductible . . . applies as follows:
> 1.   PER CLAIM BASIS.  If the deductible . . . is on a per claim basis, that deductible applies as follows:
> * * *
> b.   Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage". . . as the result of any one "occurrence."
> * * *
> With respect to "property damage", person includes an organization.
> * * *
> 2.   PER OCCURRENCE BASIS.  If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:
> * * *
> b.   Under Property Damage Liability Coverage to all damages because of "property damage" . . . as the result of any one "occurrence."
> * * *

(2d Hurley Aff. Ex. 3.)

NewMech argues that the term "claim" is ambiguous and should be construed against Zurich.  Under Minnesota law, if a term is ambiguous, it is construed against the insurer and in accordance with the reasonable expectations of the insured.  <u>See</u> <u>Minn. Mining & Mfg. Co. v. Travelers Indem. Co.</u>, 457 N.W.2d 175, 179 (Minn. 1990).  A term

of a contract is ambiguous if it is reasonably susceptible to more than one interpretation or meaning.  O'Shaughnessy v. Smuckler Corp., 543 N.W.2d 99, 101 (Minn. Ct. App. 1996).  NewMech asserts that "claim" is ambiguous because it could mean either "(1) a single claim submitted by the insured, or (2) a single claim made against the insured." (Defs.' Mem. at 13.)  In support of this contention, NewMech cites to definitions of "claim" provided by Black's Law Dictionary, Minnesota Statutes, case law, and Zurich's corporate designee.  (See id. at 12.)  But the Court may not look outside the Policy to decide if a term is ambiguous, but rather examines the Policy itself and only looks to extrinsic evidence after making such a decision.  See Norman, 696 N.W.2d at 346.  Based on the language of the Policy, the Court concludes that a "claim" has only one meaning: a claim against the insured by a single owner of property damaged as the result of an occurrence.

This interpretation is supported by the Policy's description of a "per claim basis" as opposed to its description of a "per occurrence basis."  The Policy states a per-claim deductible will apply "to all damages sustained *by any one person* because of 'property damage.'"  (2d Hurley Aff. Ex. 3 (emphasis added).)  Thus, the Policy defines a "claim" in relation to the third party whose property is damaged, not in relation to the insured. Accordingly, the only reasonable interpretation of the term "claim" under the Policy is that it refers to the damaged third-party's claim against the insured, *not* the insured's claim against the insurer.  See, e.g., Capitol Indem. Corp. v. Miles, 978 F.2d 437, 438–39 (8th Cir. 1992) (per-claim deductible applied to each car damaged as result of insured's conduct, not to building owner's claim against insured after settling with car owners); id.

- 9 -

at 438 ("[C]ases hold, we think quite properly, that if a person buys up the claims of damaged persons, aggregates them into a kind of 'superclaim,' and then sues the insured, the insured cannot successfully assert against his insurer that there is only one claim and therefore only one deductible applicable against him.") (citing Atlas Underwriters, Ltd. v. Meredith-Burda, Inc., 343 S.E.2d 65, 67 (N.J. 1986)); Atlas, 343 S.E.2d at 67 ("Several claims by third parties cannot be converted into a single claim by the mere expedient of paying them.  Examination of the insurance policy demonstrates that the term 'claim' consistently refers to an individual demand upon the insurer based upon a single assertion of a legal right by a third person.") (quotation and citation omitted); Kent Ins. Co. v. Capitol Maint., Inc., 433 So.2d 1295, 1297 (Fla. Dist. Ct. App. 1983) (the request for payment by one insurer, as subrogee for one hundred of its own insureds whose vehicles were damaged, against another insurer qualified as one hundred "claims" for purpose of per-claim deductible).

This meaning is reinforced by the juxtaposition of the Policy's per-claim option with its per-occurrence option.  The per-occurrence deductible applies to "all damages" that were "the result of any one 'occurrence,' regardless of the number of persons or organizations who sustain damages because of that occurrence."  (Compl. Ex. A. at 51.) If "claim" were interpreted as NewMech suggests it could be—namely, as the insured's request for benefits from the insured—the choice between a per-claim and per-occurrence deductible would be meaningless as long as the insured submitted one aggregated request for benefits after an occurrence.  See Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc, Inc., 825 N.W.2d 695, 705 (Minn. 2013) ("We will not adopt a construction of an

- 10 -

insurance policy which entirely neutralizes one provision if the contract is susceptible of another construction which gives effect to all its provisions and is consistent with the general intent.") (quotation omitted).  The Policy's per-claim and per-occurrence options remain distinct only if a "claim" refers to the damaged third-party's claim against the insured, not the insured's against the insurer.

Finally, if the various individual owners of the damaged condominiums made separate demands against NewMech for the repairs to their respective properties and NewMech passed each on to Zurich in turn, those would be treated as separate claims and a deductible would be applied to each.  Miles, 978 F.2d at 439 ("Suppose, for instance, that claimants had sued [the insured] in the first instance.  We entertain no doubt that . . . the individual character of each claimant's claim would be obvious.").  The Court sees no reason why the claims should be construed differently simply because the parties chose to repair the damage in a collective (and more efficient) manner.  Indeed, to hold the term "claim" is ambiguous would do nothing more than provide Zurich and other insurers a perverse incentive to prohibit the consolidation of third-parties' claims into one request by the insured.

In summary, the language of the Policy is unambiguous and each individual owner of property damaged by the leaks at The Groveland has a separate "claim" to which NewMech's $25,000 deductible applies.  The fact that NewMech submitted the expenses for the repairs collectively does not enlarge its insurance coverage.

### III.     Proof of Damages

NewMech assails Zurich's ability to prove its damages at trial.  Specifically, NewMech argues the Court should exclude Zurich's damages experts because its disclosures were untimely and incomplete.[5]  See Fed. R. Civ. P. 37(c)(1) ("If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless.").  Zurich's proposed damages experts, Scott Nacheman and Ben Wiech, adjusted the underlying claims paid to Frana.  In February 2013, Zurich disclosed Nacheman and Wiech as lay witnesses.  However, Zurich did not disclose it intended to call Nacheman and Wiech as *expert* witnesses until June 20, 2013, more than a month after the Court's deadline.  It also failed to provide a summary of the facts and opinions to which each was expected to testify.  Instead, it merely referred NewMech to its previous disclosures, which comprised thousands of documents, for their "reports."  (See Plaintiff's Disclosure of Expert Testimony, Doc. No. 39-1 ("Please see Mr. Nacheman's reports previously produced on February 28, 2013.").)

Zurich has offered no justification for its failure, stating only that counsel was "not under the impression that [NewMech] was expecting [Zurich] to disclose them as [experts]."  (Id.)  NewMech contends it has been prejudiced by these late and incomplete disclosures because it was "never afforded the opportunity to conduct any discovery or

---

[5] NewMech raised this defense in its Memorandum in Opposition to Zurich's Motion and the Court, preferring to dispense with it rather than leave it until trial, informed the parties it would rule on the issue and directed them to submit supplemental briefing.  (See 12/2/13 Order, Doc. No. 35.)

retain its own rebuttal witness." (Def.'s Mem., Doc. No. 38.)  As allowing NewMech

such an opportunity would only further delay trial in this matter, the Court will exclude

Zurich's proposed expert testimony under Rule 37(c)(1) instead.  Nacheman and Wiech

may testify as lay witnesses only.  NewMech argues that damages cannot be proven

without expert testimony but the Court disagrees and will reserve judgment on the

evidence until trial.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**ORDERED** that Zurich's Motion for Partial Summary Judgment (Doc. No. 15) is

**GRANTED**.  **IT IS FURTHER ORDERED** that Scott Nacheman and Ben Wiech are

**EXCLUDED** from testifying as expert witnesses at trial.


Dated:  January 22, 2014

<div style="text-align:right">

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge

</div>